IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| Crump Insurance Services, Inc., et al., : | |
| Plaintiffs, : | |
| v.  : | CIVIL ACTION NO. |
| : | 1:10-cv-01589-JOF |
| All Risks, Ltd., : | |
| Defendant. : | |

**OPINION & ORDER**

This matter is before the court on Defendant's motion to dismiss and motion to stay [5]; Plaintiffs' motion to remand [6]; Defendant's motion for leave to file supplemental brief [10]; and Defendant's motion for a hearing [15].

On Friday, April 23, 2010, Alejandro Duran, Carl Feldhaus, and Jordan Yoss resigned their employment with All Risks, Ltd., a wholesale insurance brokerage. The following Monday, April 26, 2010, all three individuals began working for Crump Insurance Services, Inc., a competing brokerage. Because the three had signed various forms of employment agreements with All Risks, their new employment has sparked a rash of litigation in the courts of Georgia and Maryland.

On April 23, 2010, Crump and Duran filed a petition for declaratory judgment against All Risks in the Superior Court of Fulton County. On May 21, 2010, All Risks removed that case to federal court styled as *Crump Insurance Services, Inc., et al. v. All Risks, Ltd*, Civil Action No. 10-CV-1555-RWS. That case is pending in a similar procedural posture as the instant litigation.

On April 27, 2010, Crump, Feldhaus, and Yoss filed a separate petition for declaratory judgment against All Risks in the Superior Court of Fulton County. On May 25, 2010, All Risks removed the case and it is the instant case before the court.

Finally, on May 13, 2010, All Risks filed suit against Crump Insurance Services, Inc., Alejandro Duran, Carl Feldhaus, and Jordan Yoss, in the Circuit Court of Maryland for Baltimore County. On June 11, 2010, Crump, Duran, Feldhaus, and Yoss removed that suit to the United States District Court for the District of Maryland. In all three cases, the parties raise a host of removal, transfer, and "first-filed" arguments.

Before the court can consider All Risks' motion to dismiss arguments (which are based on the fact that the employment agreements purportedly contain mandatory forum selection clauses for courts in the State of Maryland), the court must resolve Crump, Feldhaus, and Yoss' motion to remand. In its notice of removal, All Risks states that Plaintiffs Feldhaus and Yoss are former employees of All Risks each of whom received compensation in excess of $100,000 per year. All Risks further states that if Crump,

2

Feldhaus, and Yoss succeed in having a court declare certain portions of their employment agreements unenforceable, then they would be able to solicit business from valuable clients of All Risks and therefore the amount in controversy exceeds $75,000.

All Risks asserts diversity jurisdiction, but does not specify which part of 28 U.S.C. § 1446(b) it relies on to remove.  In *Roe v. Michelin North America, Inc.*, ____ F.3d ____, 2010 WL 3033802 (11th Cir. Aug. 5, 2010), the Eleventh Circuit explained the various subsections of § 1446(b):

> If a defendant relies on the complaint itself to establish the federal jurisdictional requirements, the removal is governed by the first paragraph of § 1446(b), which provides:
>
>> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> Conversely, if removability is not apparent from the initial pleading, but is later ascertainable that the case "is or has become removable," removal is governed by the second paragraph of § 1446(b). That paragraph states:
>
>> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable....

3

*Id.* at n.2.  Where a removing defendant relies on the initial complaint as the basis for its removal, the case is governed by the first paragraph of § 1446(b).  *Id.*

This fact is important because both parties have referred to *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007), but the Eleventh Circuit has stated that *Lowery* is "dicta" as far as § 1446(b) first paragraph cases are concerned.  *See Michelin North America*, *id.* n.3 (citing *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 747 (11th Cir. 2010)).  Further, the distinguishing factor in *Lowery* was the absence of any facts concerning the amount in controversy, which is not the case here.  *See Pretka*, 608 F.3d at 753.  The Eleventh Circuit noted that a "different question is presented . . . when a removing defendant makes specific factual allegations establishing jurisdiction and can support them (if challenged by the plaintiff or the court) with evidence combined with reasonable deductions, reasonable inferences, or other reasonable extrapolations.  That kind of reasoning is not akin to conjecture, speculation, or star gazing."  *Id.* at 754.

The party seeking to remove the case to federal court bears the burden of establishing federal jurisdiction.  *See Pretka*, 608 F.3d at 752.  Where the plaintiff has not pled a specific amount of damages, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.  *Id.*  Citing to Moore's Federal Practice, the Eleventh Circuit noted that to determine the amount in controversy, a court can consider "facts alleged in the notice of removal, judicial admissions made by the

4

plaintiffs, non-sworn letters submitted to the court, or other summary judgment type evidence that may reveal that the amount in controversy requirement is satisfied." *Id.* at 754 (quotation omitted). The court is also permitted to consider evidence that is submitted after the notice of removal is filed. *Id.* at 772 (citing *Sierminski v. Transouth Financial Corp.*, 216 F.3d 945 (11th Cir. 2000)). For the purposes of diversity jurisdiction, at least one plaintiff's claims must individually exceed $75,000. *Exxon Mobil Corp. v. Allapattah Services, Inc.*, 545 U.S. 546, 559 (2005).

An additional wrinkle in this case is that the state court litigation was a petition for declaratory judgment. The court discussed how to value a claim for injunctive or declaratory relief in *Morrison v. Allstate Indemnity Co.*, 228 F.3d 1255 (11th Cir. 2000). There, the court stated for "amount in controversy purposes, the value of injunctive or declaratory relief is the 'value of the object of the litigation' measured from the plaintiff's perspective." *Id.* at 1268 (quoting *Ericsson GE Mobile Communications, Inc. v. Motorola Communications & Elecs., Inc.*, 120 F.3d 216, 218-20 (11th Cir. 1997)). "In other words, the value of the requested injunctive relief is the monetary value of the benefit that would flow to the plaintiff if the injunction were granted." *Id.* (citations and quotations omitted). The "benefits resulting from an injunction are not counted where they are so uncertain that the court cannot reasonably determine whether the amount of money placed in controversy by the present suit exceeds $75,000." *Id.* at 1268-69. A "plaintiff who bases diversity

5

jurisdiction on the value of injunctive relief must show that the benefit to be obtained from the injunction is 'sufficiently measurable and certain to satisfy the . . . amount in controversy requirement.'" *Id.* at 1269 (quotation and citation omitted).

In *Ericsson*, for example, the plaintiff sought an injunction to invalidate Motorola's contract to provide a communications system to the City of Birmingham. 120 F.3d at 221-22. The court of appeals determined that the benefit of the injunction was the chance to rebid on the contract. *Id.* at 221. Ericsson would benefit monetarily only if Birmingham rebid the contract and selected Ericsson as the contractor. Because of these contingencies, the *Ericsson* court found that the value of the injunction was "too speculative and immeasurable" to satisfy the amount in controversy. *Id.* at 221-22. In *Morrison*, a class of insureds sued and claimed the right to insurance coverage for the diminished value of a vehicle after the vehicle sustains physical damage and is repaired. The court determined that the injunction had "no reasonably certain monetary value to any individual class member because it is simply impossible to know which class members will be involved in automobile accidents and assert claims for diminished value." 228 F.3d at 1269.

In this case, Crump, Feldhaus, and Yoss seek a declaration that under Georgia law, the employment agreements Feldhaus and Yoss signed with All Risks contain invalid non-solicitation covenants that purport to bar employees from soliciting certain clients of All Risks for a period of time (one year for Feldhaus and two years for Yoss) after their

6

departure from All Risks. Under the standard set forth in *Morrison*, therefore, the value of the benefit that would flow to Crump, Feldhaus, and Yoss, is the difference between the revenue that Crump could generate, and Feldhaus and Yoss could earn, with the non-solicitation covenant and that which they would be able to do without it. As Judge Carnes noted in near-identical litigation, the "relevant question is not what plaintiffs made while working for [the former insurance company] or what they were paid for their 'book of business.'" *See Raymond Huff, et al. v. Alfa Insurance Corp. et al.*, Civil Action No. 09-CV-584-JEC, slip op., at 10.

In opposition to Crump, Feldhaus and Yoss' motion to remand, All Risks proffers the declaration of David Rucker, All Risks' Senior Vice President of the Southeast. *See* Rucker Decl., ¶ 2. Mr. Rucker states that in "my substantial experience in the insurance arena, I am intimately familiar with market pricing of commissions on lines of insurance, as well as market rates of compensation paid to account executives and associate brokers." *Id.*, ¶ 4. He is also familiar with Feldhaus and Yoss in their capacities as former employees of All Risks. *Id.*, ¶ 5. Mr. Feldhaus was "an Account Executive with responsibilities of servicing and processing the accounts of All Risks' clients." *Id.*, ¶ 6. Mr. Yoss "was an Associate Broker with responsibilities of servicing and processing the accounts of All Risks' clients." *Id.*, ¶ 7.

7

"Mr. Feldhaus and Mr. Yoss serviced the same clients at All Risks. At the time Mr. Feldhaus left All Risks, he serviced seventeen (17) of All Risks' customers. Those customers presently account for over $1,000,000 in revenue annually for All Risks, and accounted for over $55,000 in compensation annually for Mr. Feldhaus. All Risks received a market rate of commissions on these accounts and paid to Mr. Feldhaus a market rate of compensation relating to these accounts." *Id.*, ¶ 8.

Mr. Yoss also serviced all seventeen of All Risks' clients. *Id.*, ¶ 10. Mr. Yoss earned $90,000 in compensation from All Risks. *Id.* Mr. Rucker offered his thoughts that if another broker like Crump were to secure the business that Mr. Feldhaus and Mr. Yoss serviced, that broker could earn revenue of $1,000,000. *Id.*, ¶ 9.

Crump then proffered competing declarations of Mr. Feldhaus and Mr. Yoss, its new employees. Mr. Feldhaus stated that "All Risks compensated me solely in the form of a base salary. I did not earn commissions and my compensation was not tied to revenue." *See* Feldhaus Decl., ¶ 3. "I neither created nor was in any way responsible for generating the purported $1,000,000 of revenue that All Risks allegedly received from certain customers. My title was Account Executive and I was only responsible for servicing and processing All Risks' customers." *Id.*, ¶ 4. "I earn a salary at Crump which is comparable to the salary that I earned while working for All Risks." *Id.*, ¶ 5. Mr. Yoss testified similarly. *See* Yoss Decl., ¶¶ 3-5.

8

In rebuttal, Mr. Rucker further testifies that Messrs. Feldhaus and Yoss were involved in targeting and pitching business to potential customers and working with new clients. *See* Rucker (Second) Decl., ¶ 5. Mr. Rucker also states that Mr. Yoss participated in a great deal of client development efforts at All Risks. *Id.*, ¶ 6. Messrs. Feldhaus and Yoss received an annual bonus each year that was equal to approximately 1% of the total sales commission revenue attributed to their account team. *Id.*, ¶ 7.

The court must determine whether the testimony of Mr. Rucker and his views on the "book of business" that Feldhaus and Yoss could bring to Crump are sufficiently certain to satisfy the jurisdictional amount. The court recognizes that All Risks has presented evidence that at least part of Feldhaus and Yoss' salary was a revenue-based bonus, in addition to base salary. Further, Mr. Rucker's testimony shows that potentially seventeen clients existed in their book of business which account for $1,000,000 of revenue to All Risks.

Notably absent, however, from any information presented to the court is whether the seventeen former clients have demonstrated any intent to move their business to Crump. The court further notes that the non-solicitation agreement does not prevent Yoss or Feldhaus from selling insurance altogether, it prevents them only from selling insurance to certain customers who were clients of All Risks. Thus, the court has no information on what business Yoss and Feldhaus have been generated for Crump since April.

9

Thus, even considering all of the declarations filed in the pleadings, it is still unclear to the court what value the removal of the non-solicitation clause could have for Crump, Feldhaus, and Yoss. Feldhaus and Yoss may or may not be able to attract the business of the seventeen customers identified. Or Feldhaus and Yoss might have already attracted new and more lucrative clients from their platform at their new employer.

The fact that it appears (even from Mr. Rucker's second declaration) that a great deal of the compensation for Messrs. Feldhaus and Yoss at All Risks was a base salary makes this consideration even more speculative. Indeed, Feldhaus and Yoss state they are earning a similar salary at Crump without yet (apparently) having the seventeen All Risks clients. Thus, the fact that they earned $55,000 and $90,000 at All Risks cannot be a measure of the benefit of the removal of the alleged invalid non-solicitation clause because they are already earning it at Crump while complying with the non-solicitation clause. *See also Raymond Huff, et al. v. Alfa Insurance Corp. et al.*, Civil Action No. 09-CV-584-JEC, slip op., at 11 ("The value of the injunctive relief requested would have to be measured by comparing what plaintiffs could earn while complying with the restrictive covenants to what they could earn without having to comply, which is speculative, as it is unclear what income plaintiffs could generate if the non-compete clause were held to be invalid.").

All Risks, itself, admits the speculative nature of the value of the injunctive relief sought when it argues only that: "Plaintiff Crump ***could*** leverage the relationship contacts

10

of Plaintiffs Feldhaus and Yoss in efforts to usurp clients of All Risks that, at a market rate, would account for over $1,000,000 in additional revenues annually to Plaintiff Crump." *See* Docket Entry [9], at 5 (emphasis added). Further, the cases cited by All Risks are inapposite. In *Rad Source Technologies, Inc. v. MDS (Canada), Inc.*, 2009 WL 4594403 (S.D. Fla. Dec. 1, 2009), the court denied a motion to remand because the x-ray blood irradiation machine the defendant wanted to market cost over $75,000 per unit and because the defendant had already paid $1,200,000 for a licensing agreement to sell the machine. *Id.* It is not necessary to speculate that the jurisdictional amount is satisfied in that case. *Davis Tune, Inc. v. Precision Franchising, LLC*, 2005 WL 1204618 (N.D. Fla. May 20, 2005), involved a non-compete agreement which barred altogether the opening of a new store within a certain distance of the store where the individual previously owned a franchise.

More interesting is All Risks' argument that Crump, Feldhaus, and Yoss have made a judicial admission in the District of Maryland that the value of the relief they seek is greater than the $75,000 jurisdictional limit.[1]  As the court noted above, All Risks filed suit against Crump, Duran, Feldhaus, and Yoss in state court in Baltimore County. Crump Duran, Feldhaus, and Yoss removed that suit to the United States District Court for the District of Maryland on the basis of diversity jurisdiction and in the process of doing so

---

[1]The court GRANTS Defendant's motion for leave to file supplemental brief [10].

11

averred that the jurisdictional limit was met. The court is certainly sensitive to parties making contradictory statements in an effort to forum shop. The court also finds it unlikely that this is an isolated problem in the instant litigation.

In any event, there are some distinctions between the instant litigation and the Maryland case. The complaint filed in Maryland brings causes of action of breach of contract, and two counts of tortious interference with contractual relations, in addition to seeking injunctive relief. All Risks seeks $100,000 on each of the counts of the complaint. An assertion of monetary damages in the Maryland case, therefore, involves less "speculative" considerations than declaratory and injunctive relief solely sought in this case.

All Risks asks for the court to hold an evidentiary hearing on this matter or to allow jurisdictional discovery. All Risks does not indicate what evidence would be presented at such a hearing or how it would further an analysis of the jurisdictional question. All Risks does say that the declarations back and forth between the parties contain false statements that should be corrected. The court, however, has taken into account all of the declarations filed in this case, including All Risks' rebuttal declaration from Mr. Rucker. Taking each at their face value, the court is still left to speculate on the value of the injunctive relief sought by Crump, Feldhaus, and Yoss. Further, one of the significant issues in the case – whether the seventeen clients have indicated any intent to leave All Risks to go to Crump

12

– is a fact within the knowledge of All Risks so jurisdictional discovery on that matter is not necessary. The court DENIES Defendant's motion for a hearing [15].

In sum, the court finds that the value of the benefit of the injunctive relief sought by Crump, Yoss, and Feldhaus is "too speculative and immeasurable" and therefore, All Risks cannot prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement. For this reason, the court GRANTS Plaintiffs' motion to remand [6] and DENIES AS MOOT Defendant's motion to dismiss and motion to stay [5].

**Conclusion**

The court DENIES AS MOOT Defendant's motion to dismiss and motion to stay [5]; GRANTS Plaintiffs' motion to remand [6]; GRANTS Defendant's motion for leave to file supplemental brief [10]; and DENIES Defendant's motion for a hearing [15].

The Clerk of the Court is DIRECTED to REMAND this case to Fulton County Superior Court.

**IT IS SO ORDERED** this 19th day of November 2010.

                                                /s   J. Owen Forrester
                                                J. OWEN FORRESTER
                             SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)